**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**
_____

MARIUSZ MYSLINSKI

                   *Plaintiff,*
                   *Counter-Defendant*

      v.                                      Case No. 1:21-cv-02894

ARTHUR D'ANNUNZIO,
JEWELRY DESIGNER SHOWCASE, INC.,
SEAN WILLIAMS,
WILLIAMS & FOSTER CONSULTING GROUP,
LLC, and DAVID ROSENBLUM

                   *Defendants,*
                   *Counter-Plaintiffs*
_____/

## <u>DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS</u>
## <u>(JURY TRIAL DEMANDED ON COUNTERCLAIMS)</u>

     NOW COME Defendants ARTHUR D'ANNUNZIO, JEWELRY DESIGNER

SHOWCASE, INC., SEAN WILLIAMS, WILLIAMS & FOSTER CONSULTING GROUP,

LLC, and DAVID ROSENBLUM, by and through counsel, and in response to the Complaint

filed by Plaintiff answer as follows:


1.     Defendants deny each and every one of the allegations contained in paragraph 1 of

Plaintiff's Complaint.

2.     Defendants deny each and every one of the allegations contained in paragraph 2 of

Plaintiff's Complaint.

3.     Defendants deny each and every one of the allegations contained in paragraph 3 of

Plaintiff's Complaint.

4.     Plaintiff's allegations  in plaintiff's paragraph 4 concerning the checks are being litigated in another lawsuit in New York Supreme Court (New York County) against a different corporate defendant that is not a party to this litigation; defendants aver that plaintiff is collaterally estopped from alleging these same facts in a second forum, so defendants deny that said checks had anything to do with the subject matter of this lawsuit, Defendant Arthur D'Annunzio admits that the referenced checks existed, but denies the remainder of plaintiff's paragraph 4. The remainder defendants have insufficient information to form a belief as to the truth or falsity of the allegations.

5.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the complaint set forth in paragraph 5.

6.     Defendants admit in paragraph 6 that Mr. D'Annunzio resides in New York and has an office at 4366A Victory Boulevard, 2nd Floor, Staten Island, New York.

7.     Defendants admit in paragraph 7 that Jewelry Designer Showcase, Inc. is a domestic corporation with offices located at 4366A Victory Boulevard, Staten Island, New York 10314. Arthur D'Annunzio is the President.

8.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the complaint set forth in paragraph 8.

9.     Defendants admit in paragraph 8 that Williams and Foster Consulting Group, LLC is located at 3030 Middletown Road, Apt.5H Bronx, New York 10461.

10.     Defendants admit in Paragraph 10 David Rosenblum is an accountant but denies the balance of the paragraph.

11.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the complaint set forth in paragraph.

12.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the complaint set forth in paragraph.

13.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the complaint set forth in paragraph.

14.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the complaint set forth in paragraph.

15.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the complaint set forth in paragraph.

16.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the complaint set forth in paragraph 16.

17.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the complaint set forth in paragraph 17.

18.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the complaint set forth in paragraph 18.

19.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the complaint set forth in paragraph 19.

20.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the complaint set forth in paragraph 20.

21.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the complaint set forth in paragraph 21.

22.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the complaint set forth in paragraph 22.

23.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the complaint set forth in paragraph 23.

24.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the complaint set forth in paragraph 24.

25.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the complaint set forth in paragraph 25.

26.     Defendants admits in paragraph 26 that Jewelry Designer Showcase had a dinner for potential investors.

27.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the complaint set forth in paragraph 27.

28.     Defendants admits Jewelry Designer Showcase Inc. has not been sold and continues to run its day-to-day activities but denies the rest of paragraph 28.

29.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the complaint set forth in paragraph 29.

30.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the complaint set forth in paragraph 30.

31.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the complaint set forth in paragraph 31.

32.     Defendants admits that Plaintiff is a shareholder but denies the balance of paragraph 32.

33.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the complaint set forth in paragraph 33.

34.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the complaint set forth in paragraph 34.

35.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the complaint set forth in paragraph 35.

36.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the complaint set forth in paragraph 36.

37.      Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the complaint set forth in paragraph 37.

38.      Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the complaint set forth in paragraph 38.

39.      Defendants deny that Plaintiff invested an additional $20,000 shares but denies the balance of paragraph 39.

40.      Defendant admits that Jewelry Designer Showcase Inc. had a Christmas party but denies the balance of paragraph.

41.      Defendants admits a writing was deciminated on January 19, 2021, but denies the balance of paragraph 41.

42.      Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph.

43.      Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph.

44.      Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph.

45      Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph.

46.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph.

47.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph.

48.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 48.

49.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 49.

50.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 50.

51.     Plaintiff's allegations  in plaintiff's paragraph 51 concerning the checks are being litigated in another lawsuit in New York Supreme Court (New York County) against a different corporate defendant that is not a party to this litigation; defendants aver that plaintiff is collaterally estopped from alleging these same facts in a second forum, so defendants deny that said checks had anything to do with the subject matter of this lawsuit, Defendant Arthur D'Annunzio admits that the referenced checks existed, but denies the remainder of plaintiff's paragraph 51. The remainder defendants have insufficient information to form a belief as to the truth or falsity of the allegations.

52.     Plaintiff's allegations  in plaintiff's paragraph 52 concerning the checks are being litigated in another lawsuit in New York Supreme Court (New York County) against a different corporate defendant that is not a party to this litigation; defendants aver that plaintiff is collaterally estopped from alleging these same facts in a second forum, so defendants deny that said checks had anything to do with the subject matter of this lawsuit, Defendant Arthur D'Annunzio admits that the referenced checks existed, but denies the remainder of plaintiff's paragraph 52. The remainder defendants have insufficient information to form a belief as to the truth or falsity of the allegations.


53.     Defendants admit no new checks have been issued and no funds have been wired.


54.     Plaintiff's allegations  in plaintiff's paragraph 54 concerning the checks are being litigated in another lawsuit in New York Supreme Court (New York County) against a different corporate defendant that is not a party to this litigation; defendants aver that plaintiff is collaterally estopped from alleging these same facts in a second forum, so defendants deny that said checks had anything to do with the subject matter of this lawsuit, Defendant Arthur D'Annunzio admits that the referenced checks existed, but denies the remainder of plaintiff's paragraph 54. The remainder defendants have insufficient information to form a belief as to the truth or falsity of the allegations.


55.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 55.

56.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 56.

57.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 57.

58.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 58.

59.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 59.

60.     Defendant admits none is required.

61.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 61.

62.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 62.

63.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 63.

64.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 64.

65.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 65.

66.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 66.

67.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 67.

68.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 68.

69.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 69.

70.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 70.

71.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 71.

72.    Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 72.

73.    Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 73.

74.    Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 74.

75.    Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 75.

76.    Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 76.

77.    Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 77.

78.    Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 78.

79.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 79.

80.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 80.

81.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 81.

82.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 82.

83.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 83.

84.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 84.

85.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 85.

86.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 86.

87.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 87.

88.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 88.

89.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 89.

90.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 90.

91.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 91.

92.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 92.

93.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 93.

94.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 94.

95.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 95.

96.     Defendants deny any knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 96.

Defendants deny that Plaintiff is entitled to any of the relief requested in his "PRAYER FOR RELIEF". Defendants deny that Plaintiff is entitled to judgment against them. Defendants deny that Plaintiff is entitled to any award of damages. Defendants deny that Plaintiff is entitled to any award of attorneys' fees, litigation expenses or costs or expenses of any kind whatsoever. Defendants deny that Plaintiff is entitled to any declaratory or injunctive relief. Any allegation in Plaintiff's Complaint not admitted or denied above is hereby denied.

## FACTUAL ALLEGATIONS COMMON TO ALL OF DEFENDANTS' AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

## DEFENDANTS' JOINT COUNTERCLAIMS

## FACTS

1.   Defendants/Counterclaim-Plaintiffs ARTHUR D'ANNUNZIO, JEWELRY DESIGNER SHOWCASE, INC., SEAN WILLIAMS, WILLIAMS & FOSTER CONSULTING

GROUP, LLC, and DAVID ROSENBLUM, for their joint counterclaims against

Counterclaim-Defendant MARIUSZ MYSLINSKI, and allege as follows:

## PARTIES

2.   Arthur D'Annunzio is an individual who resides in Staten Island, NY; Jewelry Designer

Showcase, Inc.is a Delaware corporation with offices located in Staten Island, NY; Sean

Williams is an individual who resides in Bronx, NY; Williams & Foster Consulting

Group LLC is a New York State limited liability company with offices in Bronx, NY;

and David Rosenblum is an individual residing in New Jersey. In his complaint, plaintiff

Mariusz Myslinski alleges that he is an individual who resides in New Jersey.

## JURISDICTION AND VENUE

3.   This Court has original subject matter jurisdiction of the federal question counterclaims

herein (the Declaratory Judgement Act, the Defend Trade Secrets Act, and the Securities

Act of 1933) under 28 U.S.C. §§ 1331. This Court also has supplemental jurisdiction of

the New York State common law counterclaims under 28 USC 1367, because said

common law counterclaims are so related to claims in the action within such original

federal jurisdiction that they form part of the same case or controversy.

4.   This Court has personal jurisdiction over plaintiff/counter-defendant Mariusz Myslinski

since plaintiff voluntarily subjected himself to this Court's jurisdiction when he filed this

lawsuit against all defendants/counter-plaintiffs herein.

5. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b).

## DEFENDANTS' ALLEGED FACTS

6. Plaintiff is a shareholder in Private Placement with Jewelry Designer Showcase Inc.

7. Arthur D'Annunzio is the President of Jewelry Designer Showcase Inc.

8. Plaintiff was at a holiday dinner held by Jewelry Designer Showcase Inc. on December 6, 2017, in New Jersey.

9. Plaintiff's previous accountant was co-defendant David Rosenblum.

10. Plaintiff had been engaged in other business dealings for years with co-defendant Arthur D'Annunzio to which he has been paid monies to plaintiff.  Plaintiff and Defendant Arthur D'Annunzio are currently involved in other litigation in New York State Supreme Court, Plaintiff's alleged facts in this lawsuit, in paragraphs 4, 51, 52, and 54, are currently being litigated in said New York State lawsuit, and plaintiff has been less than candid with this Court in this lawsuit Complaint, since plaintiff has failed to mention to the Court in this case that plaintiff's alleged facts that also have been previously filed in New York State Supreme Court in said other case, have been rebutted and contradicted by defendant Arthur D'Annunzio in his filings in said New York Court. Through the doctrine of collateral estoppel, plaintiff is barred from litigating said plaintiff's alleged facts a second time in this case.

11. The plaintiff absconded with JDS's confidential, proprietary list of shareholders and investors in JDS, and absconded with JDS's list of Retail Distributors. Said lists are trade secrets as defined under both New York Law and Federal Law [Defend Trade Secrets Act

("DTSA")– 18 USC 1836]. Plaintiff contacted some shareholders and at least one distributor then harassed them, in an attempt to damage the business relationship these shareholders, investors and businesses, respectively, had with defendants JDS and Arthur D'Annunzio.

12. In October 2018, Plaintiff, with confidential JDS trade secret knowledge of certain stores that were authorized distributors of JDS products, entered one of said distributor's retail stores in Atlantic City NJ at Hard Rock Hotel, and openly and severely verbally harassed the staff, during which  plaintiff identified himself as a shareholder/owner of JDS.  As a direct result of plaintiff's aforesaid acts, JDS lost that distributor account, which included five retail stores in south New Jersey and Philadelphia PA area that said distributor owned, thereby causing JDS to lose millions of dollars in revenue and profits. Plaintiff's aforesaid acts violated the parties' non-disclosure agreement executed by plaintiff with JDS dated 12/9/2017, said acts tortiously interfered with JDS's business relations with said distributor, and said acts were a misappropriation of said JDS trade secret by plaintiff in violation of New York trade secret law, and in violation of the federal Defend Trade Secrets Act ("DTSA") [see 18 USC §1836].

13. Plaintiff is barred from relief because plaintiff has made a plethora of false statements about defendants to third parties thereby defaming all defendants, and plaintiff continues to defame the defendants by accusing them of fraud and speaking to other shareholders about same in clear violation of his non-disclosure agreement.

14. Plaintiff by these actions breach the non-disclosure contract signed by both parties.

15. Plaintiff failed to follow the appropriate steps to close out his shares which can be found in his private placement memorandum.

16. Jewelry Designer Showcase is an active business that has multiple accounts.  They have a multitude of shareholders and have paid out those shareholders who have followed the appropriate administrative steps.

17. Defendant JDS's is not required by law to have a separate document or otherwise, a Private Placement Memorandum [PPM], or a Confidential Information Memorandum, or an Offering Memorandum when conducting a private placement; however, JDS did include additional information, that is sometimes included in separate private placement memorandums, in JDS's Stock Subscription Agreement - 2011 Private Placement that was signed by plaintiff. The terms in said 17 page, single-spaced, Stock Subscription Agreement - 2011 Private Placement explicitly describes that the placement was a private placement, that the placement were not registrable securities (initial private placement not receiving SEC or other regulatory approval (paragraph 9), said initial private placement fell within one or more SEC registration exemptions) that the sale of the said stock was restricted with detailed requirements for transferring said restricted stock set forth in paragraph 11 of said Subscription-Placement Agreement.

18. Defendants Sean Williams and Williams and Foster LLC never represented that they were broker or dealers, but rather were finders as said terms are defined under the securities laws and regulations.

19. Plaintiff asserts, in the JDS Subscription Agreement, that plaintiff was an accredited investor as of December 9th, 2017, as that term is defined in these Securities Act of 1933 plaintiff further, I serve it that he was qualified by knowledge and experience in financial and business matters investments securities and private placements to evaluate the merits and risks of an investment in the securities and to make an informed decision relating

thereto. Plaintiff further asserted in said subscription agreement that he has the financial capability for making the investment and for protecting his interests and that he could afford a complete loss of the investment and that the investment was a suitable investment for the plaintiff, and further agreed in said subscription agreement and he was aware that he would be unable to liquidate his investment readily in case of an emergency and that the securities he was purchasing may have to be held for an indefinite period of time and that his overall commitment to the investments that are not readily marketable is not excessive in view of his net worth and financial circumstances and that the purchase of the securities would not cause such commitment to become excessive. Plaintiff further asserted in said subscription agreement that he had adequate means of providing for his current needs, anticipated future needs and possible contingencies and emergencies and that he had no need to liquefy the investment in the securities; he further asserted that he was able to bear the economic risk of the investment. Plaintiff further asserted in said subscription agreement that he was acquiring the securities for his own account as the purpose of investment and not with a view for resale in connection with the distribution thereof nor with any president tension of distributing or selling the securities. Plaintiff asserted that he understood that the securities have not been registered under Securities Act or the security laws of any state and agreed not to make any sale transfer or other disposition of the securities unless the securities first shall have been registered under the Security Act and applicable state laws or an exemption from such registration is available. In paragraph 12 of the Subscription Agreement, plaintiff further asserted that he understood the meaning and legal consequences of the agreement and plaintiff agreed to indemnify and hold harmless the company meaning JDS and each director and officer,

which includes defendant Arthur D'Annunzio against any and all loss damage or liability due to or arising out of a breach of any representation warranty or agreement of the plaintiff contained in this agreement. Based on plaintiff's allegations in his Complaint, plaintiff evidently misrepresented material facts to defendants JDS and Arthur D'Annunzio in said subscription agreement and therefore plaintiff is liable to indemnify defendant JDS and Arthur D'Annunzio for any loss, damage or liability arising therefrom, namely any/all damages arising from this lawsuit.

20. Contrary to plaintiff's frivolous and untrue allegations in his Complaint that defendants were participating in some sort of Ponzi scheme, the defendants deny said allegations. Defendant JDS is a well-established company and has been in business for over forty (40) years. JDS continues to try to grow its business, and therefore defendant Arthur D'Annunzio  as president of defendant JDS, commenced in 2017 aggressive efforts and development of new jewelry designs in JDS's various lines, immediately followed by application for, and obtaining of, numerous US Design Patents and foreign Industrial Design protections for said new products. Said new Design Patents and new foreign Industrial Design protection applications in the United States and foreign jurisdictions continues to this day. This is intended to enhance and increase the value of the JDS and its various jewelry lines, making an IPO or private sale of JDS more attractive and more valuable. Since 2018, JDS has obtained Design Protection in over seventy (70) countries around the world, as is evidenced by the list JDS's Intellectual Property Portfolio listed at the bottom of JDS's website opening page at www.jdshowcase.com ; and said countries recently include also China and the United Arab Emirates (UAE). Said list of Design protections can be verified on publicly available databases on the internet.

21. In plaintiff's Complaint, plaintiff asserts

22. Plaintiff has continued to defame the defendants by accusing them of defrauding and speaking to other shareholders about same in clear violation of his non-disclosure agreement.

23. Plaintiff by these actions breach the non-disclosure contract signed by both parties.

24. Plaintiff failed to follow the appropriate steps to close out his shares which can be found in his private placement memorandum.

25. Jewelry Designer Showcase is an active business that has multiple accounts.  They have a multitude of shareholders and have paid out shareholders who have followed the appropriate steps.

26. Plaintiff represented to defendants that he owned his own successful contracting business in New Jersey wherein he had many years of substantial experience with estimating, negotiating contracts with customers, vendors and sub-contractors.

### DEFENDANTS' AFFIRMATIVE DEFENSES

27. Defendant further pleads the following separate and additional affirmative defenses to plaintiffs' complaint. In addition to the defenses described below, defendant expressly reserves the right to allege additional defenses as they become known through the course of discovery.

28. Defendant hereby incorporates the foregoing paragraphs as if set forth fully for each of the following affirmative defenses.

29. Plaintiff is barred from recovery since the JDS Stock Subscription Agreement qualifies for one or more exemptions from registration under the Federal Securities Laws and

Regulations.

30. Plaintiff is barred from asserting his claims and obtaining any remedy, recovery or judgment, since the Statute of Limitations for bringing this civil action have expired [See 15 USC §77m].

31. Plaintiff's recovery is barred since plaintiff's allegations are directly contradicted by the Stock Subscription Agreements- 2011 Private Placement dated December 9, 2017, signed by the plaintiff, wherein, plaintiff admits, among other things, that he is an accredited investor.

32. Plaintiff is barred from relief by its own unclean hands; plaintiff's own tortious acts substantially inferred and affected defendant JDS's business.

33. Plaintiffs have failed to state a claim upon which relief can be granted; looking at the "Four corners" of the Complaint, plaintiff has failed to state a plausible claim under Federal law as more particularly set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft, et al., v Iqbal et al.*

34. Plaintiffs' recovery is barred in whole or in part because of plaintiffs' failure to protect their own interests or to mitigate any alleged damages.

35. Plaintiff is barred from relief as a result of waiver through plaintiffs' own conduct.

36. Plaintiff is barred from relief under the doctrine of unjust enrichment.

37. Plaintiff is barred from relief under the doctrine of ratification.

38. Plaintiff's claims are barred, since defendants Sean Williams and Williams and Foster Group LLC never represented that they were a Broker-Dealer, and said defendants were "Finders" as that term is defined under the Federal Securities laws and Regulations.

39. Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

40. Plaintiff is barred from relief under the doctrine of breach of contract, since it is plaintiffs who committed a material breach of more than one contract.

41. Plaintiff is barred from relief under the anticipatory repudiation or anticipatory breach of contract by plaintiff.

42. Plaintiff is barred from relief since plaintiff lacks standing to sue any of the defendants.

43. Plaintiff is barred from relief because the defendants acted in good faith.

44. Plaintiff is barred from relief because the defendants were not the cause of plaintiffs' alleged injury.

45. Plaintiff is barred from relief because the plaintiffs prevented and frustrated defendant's performance.

46. Plaintiff is barred from relief under the parol evidence rule.

47. Plaintiff is barred from relief because plaintiffs' alleged damages are speculative.

48. Plaintiff is barred from relief due to lack of equity, the equities of the case do not preponderate in favor of plaintiffs.

49. Plaintiff is barred from relief due since plaintiffs' claims are barred as a matter of law as the plaintiffs' complaint makes numerous false allegations.

50. Plaintiff is barred from relief due to the business judgment rule.

51. Plaintiff is barred from relief due plaintiffs' failure to act in a commercially reasonable manner.

52. Plaintiff is barred from relief since plaintiffs fraudulently induced defendant into plaintiffs' alleged contracts/agreements.

53. Plaintiff is barred from relief because plaintiff asserts, in the JDS Stock Subscription Agreement - 2011 Private Placement dated 12/9/2017 that plaintiff signed, that plaintiff

was an "accredited investor" as of December 9th 2017 as that term is defined in these Securities Act of 1933, and further that he was qualified by knowledge and experience in financial and business matters investments securities and private placements to evaluate the merits and risks of an investment in the securities and to make an informed decision relating thereto, thereby making plaintiff also a sophisticated investor as well. Plaintiff further asserted in said subscription agreement that he has the financial capability for making the investment and for protecting his interests and that he could afford a complete loss of the investment and that the investment was a suitable investment for the plaintiff further agreed and said subscription agreement and he was aware that he would be unable to liquidate his investment readily in case of an emergency and that the securities he was purchasing may have to be held for an indefinite period of time and that his overall commitment to the investments that are not readily marketable is not excessive in view of his net worth and financial circumstances and that the purchase of the securities would new would not cause such commitment to become excessive. Plaintiff further asserted in said subscription agreement that he had adequate means of providing for his current needs anticipated future needs and possible contingencies and emergencies and that he had no need to liquefy the investment in the securities; length of asserted that he was able to bear the economic risk of the investment. Plaintiff further asserted in said subscription agreement that he was acquiring the securities for his own account as the purpose of investment and not with a view to or for resale in connection with the distribution thereof nor with any president tension of distributing or selling the securities Curry plaintiff asserted that he understood that the securities have not been registered under Securities Act or the security lawyers of any state in any agreed not to make any sale transfer or

other disposition of the securities unless the securities first shall have been registered on

the Security Act and applicable state laws or an exemption from such registration is

available and the company has received such documents and agreements from me and the

transferee as the company requested such time.  In paragraph 12 of the Subscription

Agreement, plaintiff further asserted that he understood the meaning and legal

consequences of the agreement and plaintiff agreed to indemnify and hold harmless the

company meaning JDS and each director and officer their rug which includes defendant

also D'Annunzio against any and all loss damage or liability due to or arising out of a

breach of any representation warranty or agreement of the plaintiff contained in this

agreement.


## DEFENDANTS' COUNTERCLAIMS

## COUNT I


**[PLAINTIFF IS LIABLE FOR DEFAMATION AGAINST ALL DEFENANTS –**

**New York Common Law - Mencher v. Chesley, 297 N.Y. 94, 75 N.E.2d 257 (1947)].**



54. Defendants repeat and reallege all of the above paragraphs as if more fully set forth

below.

55. Plaintiff has made since at least October 2018, and has continued to make within the past

year, scandalous, false and harmful statements about all of the defendants herein to third

parties, including, but not limited to, all defendants' colleagues/friends, clients,

shareholders, distributors, as applicable without privilege or authority, casting all

defendants in a bad light with said defendants' colleagues/friends, clients, shareholders, distributors, with fault amounting to at least negligence. All defendants' reputations in their respective businesses and communities have been damaged thereby.

56. The damage to these defendants based upon these actions have caused financial harm, loss of revenue, embarrassment and humiliation.

57. By reason of the forgoing, the defendants have been damaged and must be compensated for the damages and losses they have suffered in an appropriate amount to be determined at trial, but reasonably believed to exceed a total of $5,000,000.

## COUNT II

### [FRAUD AND MISREPRESENTATION AGAINST ALL DEFENDANTS New York Common Law – *New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308,662 N.E.2d 763, 639 N.Y.S.2d 283 (1995)]

58. Defendants repeat and reallege all of the above paragraphs as if more fully set forth below.

59. On information and belief, Plaintiff represented to third parties that defendants had made material misrepresentations about the purpose of the JDS private stock placement, said misrepresentations included, but are not limited to, the fact that defendants were all participants in a Ponzi scheme. Said representations by plaintiff are false, and plaintiff made said false statements intentionally or recklessly. These materially false statements by plaintiff to third parties, including, but not limited to, other private shareholders, retail distributors of JDS, and clients the other defendants, were intended by plaintiff to have

said JDS shareholders liquidate their investment in JDS ,to have said JDS distributors cease doing business with JDS, and to have the other defendants' clients cease doing business with them. Said clients, JDS shareholders and JDS distributors did rely on plaintiff's false statements, and defendants have suffered damages thereby, said damages to be determined at trial, but are reasonable believed to exceed $5,000,000.

## COUNT III

**[BREACH OF CONTRACT – PLAINITFF BREACHED
NON-DISCLOSURE AGREEMENT}**

60. Defendants repeat and reallege all of the above paragraphs as if more fully set forth below.

61. Plaintiff signed a non-disclosure agreement dated 12/9/2017 with the defendant JDS.

62. Plaintiff has contacted various other shareholders and defamed all of the defendants named in this action.

63. Plaintiff breached said agreement by disclosing confidential, proprietary trade secrets of JDS, and by contacting person(s) who are shareholders of JDS. Plaintiff has damaged the brand, goodwill and reputation of the defendant JDS.

64. By reason of the foregoing, the defendant has financially harmed the defendants, and JDS must be made whole and compensated in amount to be determined at trial, said amount is reasonable believed to exceed $10,000,000.00.

## COUNT IV

**[BREACH OF CONTRACT- PLAINTIFF BREACHED**

### STOCK SUBSCRIPTION AGREEMENT - 2011 PRIVATE PLACEMENT SUBSCRIPTION AGREEMENT]

65. Defendants repeat and reallege all of the above paragraphs as if more fully set forth below.

66. Defendants repeat and reallege the above as if more fully set forth below.

67. Plaintiff signed a Stock Subscription Agreement - 2011 Private Placement with JDS on December 9, 2017.

68. In said Stock Subscription Agreement – 2011 Private Placement, plaintiff warranted, among other things, that he was an accredited investor, that it was a private placement stock offering, that he fully understood the risks of the investment, that he understood that he may not be able to liquify the investment for an extended time period, that the invested funds may not be available, even in an emergency, that if he wanted to sell his shares to third parties that there were restrictions and that there was a detailed procedure for doing so that he needed to comply with. Plaintiff failed to abide by many of the terms in said Subscription Agreement. Plaintiff has thereby breached said Stock Subscription Agreement – 2011 Private Placement.

69. By reason of the foregoing, the defendant has financially harmed the defendant JDS. JDS must be made whole and compensated in amount to be determined at trial, but is reasonable believed to exceed $5,000,000.

### COUNT V

**PLAINTIFF'S TORTIOUS INTERFERENCE WITH DEFENDANTS' BUSINESS RELATIONS –
[New York Common Law –
*Spectacolor, Inc., Banque Nationale Paris,* 207 A.D.2d , 726 6
16  N.Y. S2d 953 (1st Dep't 1994)]**

70. Defendants repeat and reallege all of the above paragraphs as if more fully set forth below.

71. Plaintiff contacted other shareholders of JDS at which time he made wild accusations, many of which as contained in this lawsuit, in an attempt to induce other shareholders to cancel their relationship and seek their shares to be bought back.

72. Plaintiff contacted clients of defendant ROSENBLUM, to spread wild accusations, lies and false information, in an attempt to destroy ROSENBLUM's accounting business.

73. Plaintiff, in filing this lawsuit, has made accusations which are now laid bare to third-party search engines, which many shareholders, possible investors, and business associates of the defendants have regular access to, in an attempt to destroy the business value of all of the named defendants and their businesses, and the value of their shares in JDS.

74. By reason of the forgoing, the defendants have been damaged and must be compensated for the damages and losses they have suffered in an appropriate amount to be determined at trial, but is reasonable believed to exceed $20,000,000.

### COUNT V

**MISAPPROPRIATION OF TRADE SECRETS**
**[pursuant to New York Common Law –**
*Hudson Hotels Corp. v. Choice Hotels Intl.,* **995 F.2d 1173, 1176 (2d Cir. 1993)]**

75. Defendants repeat and reallege all of the above paragraphs as if more fully set forth below.

76. The Plaintiff had confidential and proprietary trade secret information belonging to JDS, which included the knowledge of at least one of JDS's list of authorized distributors of

JDS's line of jewelry products. One of said distributor's five retail stores were located in the Hard Rock Hotel in Atlantic City ,New Jersey.

77. The plaintiff, in violation the non-disclosure agreement, appeared at this store and began yelling at the staff that he was a shareholder in JDS and demanded immediate services in return. Plaintiff also made false and defamatory statements to said distributor's staff about defendant Arthur D'Annunzio and JDS.

78. The plaintiff, in violation of the both the Stock Subscription Agreement - 2011 Private Placement and the non-disclosure agreement, obtained said trade secret lists of shareholders, and distributors of JDS, contacted them, harassed them, in an attempt to damage the relationship these shareholders, investors and distributors had with JDS.

79. The plaintiff was not authorized to disseminate or in any way use the confidential information he took from JDS and has thereby misappropriated confidential trade secrets.

80. By reason of the forgoing, the defendants have been damaged and must be compensated for the damages and losses they have suffered in an amount to be determined at trial, but is reasonable believed to exceed $5,000,000.

## COUNT VI

### [VIOLATION OF FEDERAL DEFENSE OF TRADE SECRETS ACT
### Pursuant to Federal law 18 USC §1836)]

81. Defendants repeat and reallege all of the above paragraphs as if more fully set forth below.

82. The actions of Defendants as described above constitute violations of one or more provisions of the Defend Trade Secrets Act of 2016 ("DTSA"), PL 114-153, May 11, 2016 , 130 Stat 376, 18 U.S.C. § 1836 et seq.

83. The DTSA provides, in relevant part:

> An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce. 18 U.S.C. § 1836(b)(1).

84. The DTSA provides that "a court may grant an injunction – to prevent any actual or threatened misappropriation described in paragraph (1) on such terms as the court deems reasonable…"

U.S.C. § 1836(b)(3)(A).

85. By engaging in the conduct described above, plaintiff has intentionally, willfully and maliciously misappropriated, threatened to misappropriate, misused, revealed and disclosed trade secrets and/or confidential or proprietary information or knowledge of defendant JDS and continues and will continue to do so, in violation of a confidential relationship between plaintiff and defendants.

86. On information and belief, the plaintiff has already, and inevitably will continue to use or disclose JDS Confidential Trade Secret Information to damage defendant JDS's value, as plaintiff has already done with at least one of JDS's distributors with five retail locations as previously alleged.

87. On information and belief, plaintiff accepted such information with the knowledge that it was Confidential Information in violation of his duty of confidentiality, and said misappropriation of said trade secrets by plaintiff was willful and malicious; therefore pursuant to the DTSA, defendant JDS is entitled to exemplary damages in an amount two times the amount of actual loss to JDS plus plaintiff's unjust enrichment, said amount in an amount to be determined at trial, but is reasonably believed to exceed $10,000,000.

88. . Defendant JDS also requests an injunction issued by the Court enjoining plaintiff from using said confidential trade secret again.

89. As a consequence of the foregoing, defendants JDS and Arthur D'Annunzio have suffered and will continue to suffer irreparable harm and loss.

## COUNT VII

**[REQUEST FOR DECLARATORY JUDGEMENT AGAINST PLAINTIFF – Pursuant to Federal Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., a Declaratory Judgement that Plaintiff is liable to Defendant JDS for Contractual Indemnification per Paragraph 12 in JDS Stock Subscription Agreement – 2011 Private Placement]**

90. Defendants repeat and reallege all of the above paragraphs as if more fully set forth below.

91. By the filing of its Complaint, plaintiff has purported to assert claims against all Defendants for the alleged violation of the Federal Securities Act of 1933 Section 10(b) and Rule 10(b) thereunder. Defendants deny said Securities law allegations.

92. Plaintiff avers in his Complaint that he attended a dinner in New Jersey on 12/6/2017 wherein allegedly subscribing to Stock Subscription Agreement - 2011 Private Placement in JDS was discussed. Plaintiff alleges that certain misrepresentations by defendants occurred at that dinner meeting. Several days later, as more particularly set forth in defendants' factual allegations above, plaintiff executed a JDS Stock Subscription Agreement - 2011 Private Placement dated 12/9/2017, wherein plaintiff made numerous representations, assurances and warranties concerning his knowledge and ability to participate in JDS's private Stock Subscription Agreement - 2011 Private Placement to defendants. In  paragraph 12 of said Agreement, plaintiff agreed to indemnify JDS and Arthur D'Annunzio (officer of JDS) against any and all loss, damage or liability due to or

arising out a breach of any representation, warranty or agreement of the undersigned (Plaintiff) contained in this Agreement.

93. Plaintiff avers in his Complaint that he was not an accredited or sophisticated investor and that he otherwise had been misled by defendants concerning the subscription of Stock Subscription Agreement - 2011 Private Placement in JDS. However, plaintiff represented to defendants that he owned his own successful contracting business in New Jersey wherein he had many years of substantial experience with estimating, negotiating contracts with customers, vendors and sub-contractors. Plaintiff had previous business dealings with defendant Arthur D'Annunzio wherein plaintiff had been compensated. Plaintiff's extensive representations contained in the Stock Subscription Agreement - 2011 Private Placement, some of which are set forth in defendants' factual allegations above and including in paragraph 5 of said Agreement which sets forth that plaintiff personally had an opportunity to verify the information furnished to plaintiff by JDS and its representatives, and that plaintiff had independently evaluated the risks of purchasing the securities in JDS.

94. Accordingly, based on plaintiff's averments in his Complaint, plaintiff has made material misrepresentations to defendants under the JDS Stock Subscription Agreement - 2011 Private Placement and pursuant to paragraph 12 in said Subscription Agreement, plaintiff is liable to indemnify defendant JDS against any and all loss, damage or liability in this lawsuit.

95. Accordingly, there exists a substantial and continuing justiciable controversy between plaintiff and defendants. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., Defendants are entitled to a declaratory judgment finding that the plaintiff

must indemnify defendants JDS and Arthur D'Annunzio for all damages arising against said defendants in this lawsuit, said amount to be determined at trial, but is reasonably believed to exceed $20,000,000.

## COUNT VIII

**[REQUEST FOR DECLARATORY JUDGEMENT AGAINST PLAINTIFF –
Declaratory Judgement that Plaintiff's Federal Securities Act of 1933 claims against all
defendants are time barred pursuant to 15 USC §77m].**

96. Defendants repeat and reallege all of the above paragraphs as if more fully set forth below.

97. By the filing of its Complaint, plaintiff has purported to assert claims against all Defendants for the alleged violation of the Federal Securities Act of 1933 Section 10(b) and Rule 10(b) thereunder. Defendants deny said Securities law violations allegations.

98. Plaintiff executed the JDS Stock Subscription Agreement - 2011 Private Placement dated 12/9/2017. Based on the allegations in plaintiff's Complaint, plaintiff avers that this it was during 2019 that plaintiff's dispute with defendants over defendants' alleged representations to plaintiff concerning his requested return of invested funds occurred.

99. Plaintiff filed his Complaint on May 21, 2021.

100. Section 77m of the Securities Act of 1933 [15 USC §77m] provides:

> "No action shall be maintained to enforce any liability created under section 77k or 77l(a)(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 77l(a)(1) of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 77k or 77l(a)(1) of this title more than three years after the security was bona fide offered to the public, or under section 77l(a)(2) of this title more than three years after the sale."

101.     Accordingly, based on plaintiff's averments in his Complaint, and based on

Section 77m of the Securities Act of 1933 listed above, plaintiff is time barred from

pursuing any alleged claims against all defendants in this lawsuit.

102.     Plaintiff, and/or his counsel knew, or should have known, that plaintiff's claims

herein are time barred by statute, thereby making the instant lawsuit frivolous and a waste of

time and money for the defendants and the Court, and a violation of Fed. R. Civ. Pro. Rule

11. Accordingly, defendants are entitled to defendants' expenses in defending this lawsuit,

including reasonable attorney's fees and costs.

103.   Therefore, there exists a substantial and continuing justiciable controversy between

plaintiff and defendants. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §

2201, et seq., Defendants are entitled to a declaratory judgment and Order dismissing

plaintiff's Complaint, and all claims therein against all defendants, with prejudice. Further,

defendants are entitled to a Declaratory Judgment and Order finding the instant lawsuit

frivolous and a waste of time and money for the defendants and the Court, and a violation of

Fed. R. Civ. Pro. Rule 11, and Ordering plaintiff to pay all defendants' expenses in defending

this lawsuit, including reasonable attorney's fees and costs.

## COUNT IX

### UNFAIR COMPETITION
**[pursuant to New York Common Law – *American Electronics, Inc. v.*
*Neptune Meter Co.,* 33 A.D.2d 157, 305 N.Y. S.2d 931(1st Dep't 1969)]**

104.Defendants repeat and reallege all of the above paragraphs as if more fully set forth

below.

105. Plaintiff has acted unfairly because plaintiff's property rights in its confidential and proprietary distributors list, and its confidential and proprietary private placement shareholder list were misappropriated by plaintiff for plaintiff's financial advantage. Plaintiff acted in bad faith when plaintiff entered a JDS distributor's retail store in the Hard Rock Hotel in Atlantic City New Jersey and yelled at the store employees and disparaged JDS and defamed Arthur D'Annunzio,  and also contacted certain other JDS private placement shareholders and disparaged and defamed all defendants. Said acts by plaintiff were an unjustifiable attempt by plaintiff to obtain financial gain from defendants' substantial expenditure of time, labor,  and talent. Said acts by plaintiff have substantially damaged defendants in an amount equal to what all defendants would have financially made but for the wrongful acts of plaintiff. Said amount to be determined at trial, but is reasonably believed to exceed $10,000,000.

106. Also, defendants request plaintiff be enjoined by the Court from further contacts with JDS's confidential distributors and confidential private placement shareholders, and other defendants' clients.


## DEFENDANTS' JOINT PRAYER FOR RELIEF

WHEREFORE, Defendants respectfully pray for relief as follows:

A.  That the Court find, adjudge and order, that all of plaintiff's claims against all defendants be dismissed with prejudice since the instant lawsuit, and all of plaintiff's claims herein, are time barred by the Statute of Limitations for the Federal Securities Act of 1933 [15 USC §77m], considering plaintiff's own allegations set forth in his complaint; and, that

plaintiff be Adjudged and Order to pay defendants. That the Court find, adjudge and order finding the instant lawsuit frivolous and a waste of time and money for the defendants and the Court, and a violation of Fed. R. Civ. Pro. Rule 11, and Ordering plaintiff to pay all defendants' expenses in defending this lawsuit, including reasonable attorney's fees and costs

B.   That the Court find, adjudge and order that plaintiff is liable for defamation of all defendants herein, pursuant to New York law, and that plaintiff pays damages to all defendants in amounts determined at trial, but reasonably believed to exceed a total of $5,000,000.

C.   That the Court find, adjudge and order that plaintiff is liable for fraud and misrepresentation by making false statements to third parties, intentionally or recklessly, and that said materially false statements by plaintiff to third parties, including, but not limited to, other private shareholders and retail distributors of JDS, and clients the other defendants, were intended by plaintiff to have said JDS shareholders liquidate their investment in JDS, to have said JDS distributors cease doing business with JDS, and that, said JDS shareholders and distributors, and other defendants' clients did rely on plaintiff's false statements, and that plaintiff be ordered to pay all of defendants damages in amounts to be determined at trial, but reasonably believed to exceed a total of $5,000,000.

D.   That the Court find, adjudge and order that Plaintiff breached his Non-Disclosure Agreement with JDS and that JDS be compensated in amount determined at trial, but reasonably believed to exceed a total of $10,000,000.

E.  That the Court find, adjudge and order that Plaintiff breached his Stock Subscription Agreement with JDS and that JDS be compensated in amount determined at trial, but reasonably believed to exceed a total of $5,000,000.

F.  That the Court find, adjudge and order that Plaintiff tortiously interfered with the defendants' business relations with their clients, and with JDS's distributors, and that all defendants be compensated in amount determined at trial, but reasonably believed to exceed a total of $20,000,000.

G.  That the Court find, adjudge and order that Plaintiff misappropriated defendant JDS's trade secrets in violation of New York trade secret law, and that defendant JDS be compensated in amount determined at trial, but reasonably believed to exceed a total of $5,000,000.

H.  That the Court find, adjudge and order that Plaintiff misappropriated defendant JDS's trade secrets in violation of the Federal Defend Trade Secrets Act [18 USC §1836], and that said misappropriation by plaintiff was willful and malicious, and accordingly that plaintiff be ordered to pay defendant JDS exemplary damages under 18 USC §1836(3)(C) of twice the compensatory damages JDS is entitled to, said amount to be determined at trial, but reasonably believed to exceed a total of $10,000,000.

I.  . Further that plaintiff be temporarily and permanently enjoined from using said trade secrets in the future in any manner whatsoever pursuant to the DTSA.

J.  That the Court issue a Declaratory Judgement and Order pursuant to the Federal Declaratory Judgement Act [28 U.S.C. § 2201, et seq], that plaintiff is required by paragraph 12 of the JDS Stock Subscription Agreement – 2011 Private Placement, to indemnify defendant JDS and its officer Arthur D'Annunzio, for all losses, damages, and

liabilities  JDS has suffered due to plaintiff's conduct, and that plaintiff be ordered to pay said damages to JDS and Arthur D'Annunzio, said amount to be determined at trial, but reasonably believed to exceed a total of $20,000.000.

K. That the Court find, adjudge and order that Plaintiff is liable to defendants under New York Unfair Competition law, and that plaintiff pay damages for said unfair competition in an amount to be determined at trial, but reasonably believed to exceed a total of $10,000,000, that further plaintiff be enjoined by the Court from further contacts with JDS's confidential distributors and confidential private placement shareholders, and other defendants' clients.

L. That the Court find, adjudge and order striking plaintiff's complaint paragraphs 4, 51, 52 and 54, since said paragraphs' allegations have nothing to do with the subject matter of this case, and are, in fact currently being litigated by plaintiff against a corporate defendant that is not a party in this lawsuit, in an entire different and separate business dispute in New York Supreme Court (New York County), and that the Court find, adjudge and order the plaintiff be collaterally estopped from pursuing said allegations in this lawsuit, and due to said improper conduct in asserting said allegations, without notice to the Court, in a second forum in this lawsuit, the plaintiff and his counsel be sanctioned under Fed. Rule Civ. Pro. 11, ordering plaintiff and/or his counsel, to pay all defendants' expenses in defending this lawsuit, including reasonable attorney's fees and costs.

M. That the Court award all defendants such other relief as the Court deems just and equitable.

Dated, this the 9th day of August 2021.

         _s/Steven J. Miller_____

         Steven J. Miller, Esq.

         Email: steve@miller-law-offices.com

         THE MILLER LAW OFFICES, PLC

         4000 Ponce de Leon Blvd. – Suite 470

         Coral Gables, FL 33146

         Tel.: 305-803-5168

         Fax:  305-675-4605

         *Attorney for Defendants*

CERTIFICATION

I hereby certify that on August 9, 2021, that the foregoing document is being served this day on all counsel of record and non-represented parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF by email for those counsel of parties who have not yet appeared in this case.

                                _s/Steven J. Miller___              

                                Steven J. Miller, Esq.

                                THE MILLER LAW OFFICES, PLC

                                4000 Ponce de Leon Blvd. – Suite 470

                                Coral Gables, FL 33146

                                Tel.: 305-803-5168

                                Fax:  305-675-4605

                                Email: steve@miller-law-offices.com

                                *Attorney for Defendants*

**SERVICE LIST**

Mariusz Myslinsk vs. Arthur D'Annunzio, Jewelry Designer Showcase, Inc., Sean Williams,

Williams & Foster Consulting Group, LLC, and David Rosenblum

**Case No.: 1:21-CV-02894**

UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF NEW YORK

Michael Robert Wood, Esq.
Cermele & Wood LLP
2 Westchester Park Drive, Suite 110
White Plains, NY 10604
(914) 967-2753
Fax: (914) 967-2754
Email: mike@cw.legal
[Service by CM/ECF]


Benjamin M. Rattner, Esq.
CERMELE & WOOD LLP
2 Westchester Park Drive – Suite 110
White Plains, NY 10604
Tel.: 914-967-2754
Email: ben@cw.legal
*Attorney for Plaintiff*
[Service by CM/ECF]